**William J. RAWLINGS and Janie Rawlings,**
**Plaintiffs-Respondents-Appellants,**

v.

**Ben YOUNG and Hunt Concrete Company, Inc.,**
**Defendants-Appellants-Respondents.**

**Nos. 39671, 39674.**

Missouri Court of Appeals,
Eastern District,
Division Two.

Oct. 16, 1979.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 16, 1979.

Application to Transfer Denied
Jan. 15, 1980.

Hendren & Andrae, Richard S. Brownlee, III, Jefferson City, for plaintiffs-respondents-appellants.

Edwards, Seigfreid, Runge & Leonatti, P/C, Jerome W. Seigfreid, Mexico, for defendants-appellants-respondents.

KELLY, Judge.

These two appeals from a judgment of the Circuit Court of Audrain County have their common origin in a suit for damages wherein William J. Rawlings and Janie Rawlings, his wife, were the plaintiffs and Ben Young and Hunt Concrete Company, Inc., were the defendants.

In No. 39671 the appellants are Ben Young and Hunt Concrete Company, Inc., and they have appealed from the judgment of the trial court entered upon a jury verdict in favor of the Rawlings on both Counts of their petition. Mrs. Rawlings, alone, has appealed from the action of the

trial court in granting a new trial as to her claim for loss of consortium because she did not agree to a remittitur ordered by the trial court of $9,500.00 of the $10,000 jury verdict rendered in her behalf.

For purposes of clarity we shall refer to the parties as plaintiffs and defendant or defendants, the status they occupied in the trial court.

Because the trial court sustained the plaintiffs' motion for directed verdict at the close of the defendants' opening statement on the issue of liability we glean the facts of that phase of the case from the opening statements of the parties. After plaintiffs' motion was sustained the only evidence adduced at trial was with respect to the injuries and damages sustained by the plaintiffs.

On July 8, 1974, the Rawlings owned a 1971 Pontiac motor vehicle. Mr. Rawlings was driving the vehicle, which was stopped at the intersection of Monroe and Western Avenues in Mexico, Missouri, in a line of traffic waiting to cross the intersection in an eastbound direction. He was about the fourth car in line west of the intersection. At the same time Ben Young, who was employed by the Hunt Concrete Company, Inc. as a truck driver, was operating a 1966 International Harvester concrete mixer truck eastbound on Monroe Street down a slight grade; as he approached the Rawlings' automobile he applied his brakes but they failed, and he ran into the back end of the Rawlings' automobile, demolishing it. A chain reaction of collisions took place with respect to the automobiles in front of the Rawlings' auto, after Mr. Rawlings' car was pushed into the car ahead of his. Mr. Rawlings was injured and was removed from the scene to a hospital. Counsel for the Rawlings told the jury that the law requires a vehicle to have two sets of adequate brakes in good working order and that the truck had only one set of brakes, had no emergency brake, and also no horn as the law requires.

Counsel for the defendants, in his opening statement, advised the jury that their evidence would be that the truck had about 90,000 miles on it at the time of this occurrence. It had two big front wheels and eight large rear wheels. It was equipped with a vacuum assisted hydraulic brake system which activated all ten of those wheels and was worked by brake fluid pressure. All ten wheels were activated by this hydraulic system. The parking brake which came with the truck was a lever in the cab which goes through a linkage back to a band on the drive shaft and this band is about 4 inches wide and has a clasping effect. When one pulls this lever it clamps on the spinning drive shaft that goes from the motor to the rear wheels. When this truck was being operated on July 8, 1974, the "hand brake, the parking brake had burned out," because the truck had been started up and driven off with the hand brake set.

According to defendants' counsel, their evidence would show that when Mr. Young came to work that morning he conducted a routine check of the truck, picked up a load of concrete and drove to Centralia, where he worked, and picked up a couple of loads there. During these times he used the brakes on the truck, and had no trouble all day long, other than calling a mechanic to work on the mixer motor. When he had finished his work in Centralia, he started back around 1:30 p. m. En route he had some problem with the mixer motor again, pulled off the road and coasted to a stop without really using his brakes. After he got the mixer motor operating again, he resumed his drive back to Mexico. As he approached the intersection where the accident occurred, he came down the hill at about 20 miles an hour. The truck was unloaded with just a little water in it to wash out the concrete mixer. As he got even with the shopping center he observed the three or four cars ahead of him stopped at the intersection. Mr. Rawlings' car was the last in line, either moving a little bit or already stopped, about 75 feet back from the intersection. At this time Mr. Young was approximately 100 feet west of the Rawlings' auto and coming down the hill, when he applied the foot brake which acti-

vates all ten tires, just as he had done a hundred times before. The pedal went all the way to the floor. He looked ahead and to the left, and saw cars coming towards him up the hill. To his left were homes and to his right a curb and embankment. He couldn't swerve to his left because if he had done so he would run head-on into the approaching cars. If he turned to the right the truck would have tipped and the ball would have come off and rolled down the street. He immediately downshifted to a lower gear and then ran into the rear of Mr. Rawlings' automobile.

Counsel further stated that an engineer would testify that he had viewed the truck, taken many measurements, ran many tests, and viewed the scene, and counsel would expect to prove from him that the parking brake wouldn't have stopped the truck in time to keep it from hitting anybody even had Mr. Young applied it. That brake is only adequate for parking, and is not made to stop a moving vehicle.

The expert witness would testify that the hydraulic brake—the foot brake—was designed and used to stop a moving truck and that the hand brake in concrete trucks is used to hold the truck when discharging or unloading concrete and to keep the truck from moving; that it is a parking brake. Counsel would also prove by this witness that even had this parking brake been functioning properly and Mr. Young had pulled on it as he was coming down the hill, at most he would have smelled smoke even if the parking brake were new, because the parking brake is not designed to stop a moving truck.

At this point plaintiffs' counsel, out of the hearing of the jury, moved for a directed verdict for the plaintiffs "based upon the judicial admission of counsel, . . . that the truck did not have two sets of adequate brakes." At the conclusion of some discussions in the chambers of the trial court concerning plaintiffs' motion the trial was resumed and it was announced by the trial court that the plaintiffs' motion for a directed verdict was sustained and the cause would continue on the issue of damages.

Upon the completion of the evidence on the damages issue the cause was submitted to the jury, which returned a verdict in the sum of $55,000.00 on Count I of plaintiffs' petition for the damages sustained by Mr. Rawlings and for $10,000.00 on Count II of the petition for Mrs. Rawlings' loss of consortium. After timely motions for new trial were filed by the defendants, their motion as to Count I was overruled but their motion as to Count II was sustained unless the plaintiffs agreed to remit the damages awarded in Count II in excess of $500.00. The defendants appealed from the judgment of the trial court and Mrs. Rawlings appealed from the order granting the defendants a new trial on Count II of the petition.

The defendants' initial Point Relied On is that the trial court erred in directing a verdict on the issue of liability because there was no evidence or judicial admission that the failure of the defendants to provide two sets of adequate brakes, kept in good working order, was the proximate cause of the accident and resulting injuries.

We agree with this contention of the defendants, and for that reason reverse and remand the judgment in this case.

█ Initially, we would note that the primary purpose of an opening statement is not to test the sufficiency of the anticipated evidence but is to inform the judge and jury in a general way of the nature of the action so as to enable them to understand the case and to appreciate the significance of the evidence as it is presented. *Zabol v. Lasky,* 498 S.W.2d 550, 553[1] (Mo.App. 1973). And it is seldom, if ever, that a court should direct a verdict for a plaintiff, the party having the burden of proof on the issues supporting his claim. *Scott v. Thornton,* 484 S.W.2d 312, 314[3] (Mo.1972); *Fulton v. Bailey,* 413 S.W.2d 514, 516[2] (Mo. 1967); *Schmid v. Langenberg,* 526 S.W.2d 940, 944[7] (Mo.App.1975).

Here, however, plaintiffs contend that defendants' counsel, in his opening statement, judicially admitted that the failure to

have two sets of adequate brakes caused the collision and the resulting personal injuries and damages sustained by the plaintiffs. The first question for decision is whether defendants' counsel made a judicial admission that the concrete truck did not have two adequate sets of brakes.

■ The rule on judicial admissions in opening statements at trial has been enunciated by the Missouri Supreme Court in *McCarthy v. Wulff*, 452 S.W.2d 164, 167[1] (Mo.1970), and *Bayer v. American Mutual Casualty Company*, 359 S.W.2d 748, 753[5] (Mo.1962). Both of these cases have established that where an attorney, in his opening statement, makes a clear, unequivocal admission as to a fact, that admission is binding on his client. Where, however, an attorney merely outlines anticipated proof on one or more issues in the case no binding admission results. Determinative, then, of whether defendants' counsel's opening statement constituted a judicial admission is whether he was stating facts or merely outlining what he anticipated the defendants' evidence would be.

■ The plaintiffs' contention, as we perceive it, is that the Statute, § 307.170(3) RSMo. 1978, required that the truck involved in this collision be provided with "two sets of adequate brakes, kept in good working order . . ." and to satisfy this requirement the truck had to be provided with two separate sets of brakes so that if one failed to function, the other would. They also contend that because defendants' counsel, in his opening statement, stated that defendants' evidence would be that the "parking brake" which came with the truck at the time it was purchased, had burned out and wasn't fully functional, together with his statement that defendants' evidence would show that this "parking brake" was not designed to stop a moving truck, but was adequate only for parking and even

if it had been functional would not have stopped the truck as it moved down the grade towards the intersection of Monroe and Western Avenues, he judicially admitted that the truck was not provided with the two separate sets of brakes required by the statute and therefore was guilty of negligence as a matter of law. *Rice v. Allen*, 309 S.W.2d 629, 631 (Mo.1958).

We do not agree. Viewed in the light of *McCarthy* and *Bayer*, we conclude that even if we assumed there was a judicial admission that the "parking brake" would not stop the truck and was not an adequate set of brakes for that purpose, we find no admission that the truck was not equipped with a second set of brakes which were adequate.[1]

■ However, even if defendants were negligent per se it was incumbent on plaintiffs to show the causal connection between the violation of the statute and the injury. *O'Neill v. Claypool*, 341 S.W.2d 129, 133[4] (Mo.1960); *Beezley v. Spiva*, 313 S.W.2d 691, 696[8] (Mo.1958); *Lochmoeller v. Kiel*, 137 S.W.2d 625, 629[5] (Mo.App.1940). The record on appeal demonstrates that the trial court misconstrued the defendants' position on this issue. At the time plaintiffs' motion for directed verdict was sustained there was no admission by the defendants' counsel that if the parking brake were functioning it could have stopped the truck within 100 feet while the truck was travelling downgrade at a speed of 20 m. p. h., when the driver of the truck first ascertained that the service brakes were not functioning. Nor was there any evidence of this because at the time the plaintiffs' motion was filed the trial had not yet reached the stage where evidence was being adduced. The court, in *Lochmoeller v. Kiel*, 137 S.W.2d at 629, said:

1. The Missouri Statute, § 307.170(3) RSMo. 1978, does not specify that one of the required "two sets of adequate brakes" must be an "emergency brake" or "parking brake." By § 307.360.2 RSMo. 1978 the Superintendent of the Missouri State Highway Patrol is empowered to establish the standards and procedures

for inspection of motor vehicles required by §§ 307.350 to 307.390; and pursuant to this authority a regulation for inspection has been promulgated relative to commercial vehicles' emergency and parking brakes. See 4 C.S.R. 50.2–170(3).

. . ., the question of causal connection between the violation of the statute and plaintiff's injury, if any, was in any event a matter for the jury to determine, as also was the question of whether he had in truth been injured in the accident, which the jury was not compelled to believe, . . .

We hold that the trial court erred in sustaining plaintiffs' motion for directed verdict on the issue of liability at the conclusion of the defendants' counsel's opening statement for the reasons aforesaid and reverse and remand the cause for a new trial.

The remaining Points Relied On presented on appeal present issues which were occasioned by the erroneous conclusion of the trial court that plaintiffs were entitled to a directed verdict on the issue of liability. On retrial they should not recur and therefore we do not reach them for decision.

■ With respect to Mrs. Rawlings' appeal from the post-trial order of the trial court granting the defendants a new trial on Count II of the plaintiffs' Third Amendment Petition on the grounds that the credible evidence does not support the damages awarded, we find no abuse of discretion by the trial court and affirm. *Union Electric Company of Missouri v. McNulty*, 344 S.W.2d 37, 39[1] (Mo.1961). However, because the trial court erred in directing a verdict in her behalf on the question of liability, the new trial shall not be limited to the issue of damages alone, but shall go also to the issue of defendants' liability.

STEPHAN, P. J., and STEWART, J., concur.