Margaret DERRICK, Appellant,

v.

Douglas C. NORTON, d/b/a Norton Fine Arts Studio, Respondent.

No. 73075.

Missouri Court of Appeals, Eastern District, Division One.

Oct. 13, 1998.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 28, 1998.

Application for Transfer Denied Feb. 23, 1999.

Janet F. Catalona, Madeline Long-Bennington, Clayton, for appellant.

George F. Kosta, W.O. Hoefle, St. Louis, for respondent.

AHRENS, Judge.

Plaintiff Margaret Derrick appeals from a directed verdict granted by the trial court for defendant Douglas C. Norton of Norton Fine Arts Studio (Norton). Derrick sought recovery for injuries sustained when a mirror installed by defendant on a closet door in her home fell on her. We reverse and remand.

Norton, who had been hired by Derrick to hang pictures in her apartment, installed the full-length mirror in a dressing room on June 23, 1993. All details with respect to the installation, including the decision to hang the mirror on the inside surface of a two-panel louvered door, were decided by Norton. The mirror, held in place by four plastic clips, remained in place until December 4, 1995. On that date, after Derrick opened the closet door, the mirror fell, striking Derrick on the side of her head and causing her to fall. Derrick, who was eighty-four on the day of her injury, sustained multiple pelvic fractures and bruises. She was hospitalized from December 6 to December 27, 1995 and then transferred to an extended care facility before returning home where she received nursing care. Her medical expenses exceeded $69,000. Derrick's recovery was gradual, and by the time of trial she was able to ambulate with a walker. She was not able to drive again, however, and continued to suffer pain and loss of routine life activities.

At trial, Derrick offered the testimony of Rudoph Beuc, Jr., a certified architect and building official, to prove that Norton's negligence in installing the mirror on June 23, 1993 caused it to fall on December 4, 1995. Beuc testified that the mirror was not properly installed and that, if he had written

specifications for its installation, he would have required the mirror to be installed against a solid backing instead of a moving, louvered door and to be anchored by at least ten clips. When asked at trial what caused the mirror to fall, Beuc replied, "Technically I don't know why the mirror fell because I was not there. I know that it was...." His answer was interrupted by opposing counsel who objected that Beuc's testimony was not admissible because Beuc had admitted that he had no opinion regarding causation. Although Derrick attempted to salvage Beuc's testimony with hypothetical questions, the trial court repeatedly sustained counsel's objections. Derrick made the following offer of proof, paraphrased by the court:

> ...[I]f he [Beuc] were asked the question barring any kind of outside influence, that in his professional opinion the reason for the fall was improper installation, would you [opposing counsel] stipulate that he would say that if he were asked so that if some Appellate Court thinks that what I rule is wrong, that they at least have before him what they thought his testimony would be.

At the conclusion of plaintiff's evidence, the trial court granted Norton's oral motion for a directed verdict. Derrick's motion to set aside the verdict and for a new trial was denied, and this appeal followed.

■ In reviewing a directed verdict in favor of the defendant, this court views the evidence and permissible inferences most favorably to the plaintiff, disregards contrary evidence and inferences, and determines whether plaintiff made a submissible case. *Friese v. Mallon,* 940 S.W.2d 37, 40 (Mo.App. 1997). If it may be fairly inferred that defendant was negligent, the evidence was sufficient for submission of the case to the jury. *Cline v. William H. Friedman & Assocs., Inc.,* 882 S.W.2d 754, 758 (Mo.App.1994). If the jury can only determine the question of negligence by resorting to conjecture and surmise, the evidence is insufficient. *Id.*

Derrick argues three points on appeal: (1) that the trial court abused its discretion in excluding Beuc's testimony regarding causation; (2) that the trial court erred because circumstantial evidence of negligence ad-

duced at trial was sufficient to make a submissible case; and (3) the plaintiff made a submissible case under the doctrine of res ipsa loquitur. We address these three points in turn.

■ Derrick first argues that the trial court erred when it excluded Beuc's testimony concerning his opinion as to why the mirror fell. "An expert witness may base a competent opinion upon matters within his personal knowledge or observation, upon competent evidence in the case or upon both." *Wiley v. Pittsburg and Midway Coal Min. Co.,* 729 S.W.2d 228, 232 (Mo.App.1987). The admission or exclusion of expert opinion testimony is within the sound discretion of the trial court. *Liszewski v. Union Electric Co.,* 941 S.W.2d 748, 751 (Mo.App.1997). We will not reverse the trial court's evidentiary ruling unless there is a substantial or glaring injustice. *Id.*

■ Beuc's testimony on causation was interrupted by opposing counsel before Beuc could render his opinion. The following exchange took place at trial:

Q: "If there hadn't been any earthquake or some foreign object causing the mirror to fall, do you have an opinion as to the cause of the fall of the mirror?"

A: "Technically I don't know why the mirror fell because I was not there. I know that it was...."

Opposing counsel: "Your Honor, let me object to any further editorialization as the witness has said he does not know why in answer to a question as to whether he has an opinion."

Court: "Sustained."

The trial court abused its discretion when it excluded Beuc's opinion as to why the mirror fell. Beuc's admission that he was not certain as to why the mirror fell because he was not present when it fell merely indicates that his opinion would be based on his own observations of the door after the injury and facts in evidence rather than personal observation of the mirror's fall. As the court observed in *Lineberry v. Shull,* 695 S.W.2d 132, 136 (Mo.App.1985), use of words such as "think" or "guess" by an expert do not ren-

der an opinion inadmissible if the expert intends to express an opinion or judgment. *See also Johnson v. Creative Restaurant Management,* 904 S.W.2d 455, 459 (Mo.App. 1995) (use of the word "suggests" was merely a semantic distraction and did not render expert testimony inadmissible). Although Beuc used the words "I don't know why," it is clear from the rest of his statement that he was merely noting that he had not personally observed the occurrence and was not denying that he had any opinion at all. The trial court therefore abused its discretion and allowed a substantial injustice when it prevented Beuc from testifying on the issue of causation.

In her second point on appeal, Derrick argues that the trial court erred because circumstantial evidence of negligence adduced at trial was sufficient to make a submissible case. "To make a prima facie showing of causation, plaintiff must show the defendant's negligent conduct more probably than not was the cause of the injury." *Morrison v. St. Luke's Health Corp.* 929 S.W.2d 898, 901 (Mo.App.1996). "The defendant's negligence need not be the sole cause of the plaintiff's injury, but simply a cause or a contributing cause." *Id.* Absolute certainty is not required in proving a causal connection between a negligent defendant's actions and the plaintiff's injury. *Hackathorn v. Lester E. Cox Medical Ctr.,* 824 S.W.2d 472, 475 (Mo.App.1992). This connection can be proven by reasonable inferences from proven facts or by circumstantial evidence. *Id.See also Menschik v. Mid–America Pipeline Co.,* 812 S.W.2d 861, 864–65 (Mo.App.1991) (direct proof is not required; the jury may infer causation from circumstances).

Evidence adduced at trial indicated that Norton installed the mirror and decided where and how to hang it. Derrick lived alone and testified that the only other person who had access to the mirror was a woman hired to clean the apartment weekly. Derrick testified that she opened the closet to use the mirror approximately once a week. No one, except Derrick, her daughter, and the building superintendent, had keys to the apartment. Nothing in the apartment, including other hanging objects, were out of

place when Derrick's family arrived immediately after the injury, suggesting that no earthquakes or intervening events caused the mirror to fall. Derrick also testified that when she opened the closet door on December 4, 1995, the mirror struck her on the head and knocked her to the ground. There were no other witnesses to the injury.

Expert witness Beuc testified that screw holes and portions of plastic clips remaining in the door, which had not been altered since Derrick's fall, indicated that only four plastic clips, two at the bottom and one on each side, held the mirror in place. Beuc testified that the mirror was improperly installed because a full-length mirror of the size and weight of the mirror at issue required installation on a solid, nonmoving surface and anchoring with more than twice the number of plastic clips than Norton used.

The jury could have reasonably inferred from this circumstantial evidence presented and facts proved at trial that defendant's negligent installation of the mirror more probably than not caused or contributed to Derrick's injury. This inference could reasonably be drawn even though the mirror was installed over two years prior to the injury. In *Hyman v. Great Atlantic & Pacific Tea Co.,* 359 Mo. 1097, 225 S.W.2d 734, 735–36 (1949), an expert witness testified that a store's tile floor had been installed negligently because it lacked expansion joints and because an insufficient amount of cement had been used in the mortar securing the tile to the floor. The expert witness, an architect, testified that the faulty condition of the floor, which caused the tiles to loosen, could have existed for two years or more prior to plaintiff's fall. *Id.* at 736–737. The Missouri Supreme Court ruled that the architect's opinion that the negligent condition had existed for two years or more prior to injury was not based on speculation and conjecture. *Id.* at 736. In the instant case, Beuc offered expert testimony that the installation of the mirror was faulty. Derrick offered no evidence that the installation of the mirror had been altered or changed by any intervening event. The jury would not have to resort to conjecture or speculation to infer the negligent condition of the mirror existed for over

two years prior to Derrick's injury. Just as it may have taken over two years for tiles to loosen in an improperly installed floor, the jury could infer that it took over two years for the four plastic clips used to install the mirror to loosen or break.

A plaintiff should not be denied the right to have her case submitted to the jury unless her own evidence discloses another occurrence which might as well have caused the injury. *Wilson v. Kaufmann,* 847 S.W.2d 840, 848 (Mo.App.1992) (if plaintiff's evidence discloses the actual happening of some other occurrence which might as well have caused the injury, the verdict of the jury would be rest upon mere speculation and conjecture). No evidence offered by Derrick at trial disclosed any other occurrence that might just as well have caused the injury as negligent installation of the mirror. "In the absence of 'compelling evidence' establishing the absence of causation, the causation question is for the jury." *Menschik,* 812 S.W.2d at 865. We conclude that Derrick made a sufficient showing of circumstantial evidence to make a submissible negligence case, that her own evidence did not disclose another occurrence that might as well have caused the injury, and that sufficient evidence was submitted on the issue of causation to submit Derrick's negligence claim to the jury.

We do not agree, however, with Derrick's claim that her case should have been submitted under the res ipsa loquitur theory. "The doctrine of res ipsa loquitur is available to relieve a plaintiff from the burden of proving specific negligence when (1) the occurrence resulting in injury was such as does not ordinarily happen if those in charge use due care; (2) the instrumentality involved was under the management and control of the defendant; (3) and the defendant possesses superior knowledge or means of information as to the cause of the occurrence." *Bonnot v. City of Jefferson City,* 791 S.W.2d 766, 768 (Mo.App.1990). Derrick pleaded and argued specific negligence, and recourse to the res ipsa loquitur theory is incompatible with proof of specific negligence. *Id.* at 769. "The res ipsa loquitur rule aids the injured party who does not

know and therefore cannot plead or adduce proof showing the specific cause of or how the event which resulted in his injury occurred, but if he knows how it came to happen, and just what caused it, and either specifically pleads or proves the cause, there is neither room nor necessity for the presumption or inference which the rule affords." *Id.* Derrick pleaded specific negligence. At trial, she made an offer of proof that, in her expert's opinion, because the mirror was improperly installed with only four clips on a moving door that did not provide a solid backing for support, it fell from its moorings, struck her, and caused her injuries. This offer of specific proof precludes resort to the res ipsa loquitur theory on appeal.

We conclude that plaintiff made a submissible negligence case and that the trial court erred when it excluded plaintiff's expert testimony on causation and granted defendant's motion for a directed verdict. The judgment is reversed and remanded.

PUDLOWSKI, P.J., and CRANDALL, J., concur.